IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DANIEL GARLINGER,**

      **Plaintiff,**

      vs.

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

Case No. 2:19-cv-3614

**Chief Judge Algenon L. Marbley**

**Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Plaintiff, Daniel Garlinger, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiffs' Reply (ECF No. 16), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

On May 20, 2013, Plaintiff filed his applications for disability insurance benefits and supplemental security income, alleging that he had been disabled since December 16, 2008. (R. at 29.) Plaintiff's applications were denied initially and upon reconsideration. (*Id*.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (*Id*.) ALJ William J.

Mackowiak held a hearing on November 13, 2015, at which Plaintiff, represented by counsel, appeared and testified. (R. at 49-86.) On December 3, 2015, ALJ Mackowiak issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 26-48.) On December 14, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) Plaintiff, proceeding *pro se,* filed an action in this Court on February 22, 2017. *See Garlinger v. Comm'r,* Case No. 2:17-cv-156. Upon motion by the Commissioner, the Court remanded the case for a new hearing and a new decision. (R. at 3281-3286.)

On remand, ALJ Thomas L. Wang held a hearing on March 6, 2019, at which Plaintiff, who was represented by new counsel, appeared and testified. (R. at 3185-3213.) On April 23, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 3147-3184.) Plaintiff, once again proceeding *pro se*, commenced the instant action. (ECF No. 3.)

## II.  RELEVANT HEARING TESTIMONY

The Undersigned has thoroughly reviewed the transcripts of both oral hearings in this matter and Plaintiff's testimony as to his conditions and resulting limitations. (R. at 49-86; 3185-3213.) Briefly, at his hearing on remand in response to questioning by the ALJ, Plaintiff testified that he was unable to work because

> I have a lot of issues and they all seem to kind of add up to no job that I could think of I could do. My lower body basically makes anything standing, bending, anything physical not very good. So we've got that and the spine injury and then the mental problems that seem to be getting worse, I just can't remember a lot of times what I'm supposed to be doing. I don't think I'd make a good employee for any job that I can think of.

(R. at 3193.)

In response to questioning from his counsel, Plaintiff described his ongoing health

2

problems in this way

> It's hard for me to talk about this stuff but it's my body and my life. I've spent a lot of time trying to figure out something I could do for a living and because of all my problems combined it's just I can't find anything. If I sit in the same position for too long, I hurt, I have other issues bending, lifting, walking, all these things are pretty much impossible. I can lift about a gallon of milk and only a couple times at that. … I really since with the light and other environmental things have triggered migraines and just hurt. The fibromyalgia makes me feel like I've served up a flu all time in terms of achiness and just tiredness, and it makes it kind of hurt to wear clothing so I don't leave the house if I have to pretty much. And then I get flashbacks to the car wreck and it's general anxiety due to all kinds of things, but a lot of it has been learning to walk with the walker, just adjusting to my life with the broken body. I was born with asthma and I had [ADD] and I had injury to my left hand when I was a kid and those things I have somewhat worked around but after the car wreck the eye problem I forgot, eye problem, the asthma, the [ADD] and the hand issue combined with all the other stuff from the car wreck with my spine injury, it's just I can't work. I've been, I can't sit there and type for very long and even when I do, my left hand doesn't work quite right, I can't type very well. It's so frustrating, I tried, I was raised to do the best you can and I do the best I can, but I just can't do it. Sorry, I don't know what else to say.

(R. at 3201-3202.)

Rather than summarize any additional testimony here, the Court will make reference and provide citations to the transcript as necessary in the discussion below.

### III. RELEVANT MEDICAL RECORDS

Plaintiff's medical records are set forth in 15 separate exhibits to the Administrative Record totaling 3982 pages and covering a time span of at least ten years from roughly 2009 through 2019. In the supplemental decision at issue here, the ALJ noted the numerous opinions in the record and accorded weight to approximately 11 different purported medical opinions, not all of which he found to be from acceptable medical sources. (R. at 3163-3165.) The Undersigned has thoroughly reviewed Plaintiff's extensive medical records. However, rather than summarize that information here, the Undersigned will make reference and provide citations to the transcript as necessary in the discussion below.

## IV. ADMINISTRATIVE DECISION

On April 23, 2019, the ALJ issued his decision. (R. at 3147-3184.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of December 16, 2008. (R. at 3153.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, post laminectomy syndrome; migraine headaches; fibromyalgia; myofascial pain syndrome; traumatic brain injury; major depressive disorder; post-traumatic stress disorder (PTSD); social phobia; and attention deficit/hyperactivity disorder (ADHD). (R. at 3153.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?
    2. Does the claimant suffer from one or more severe impairments?
    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 3160-3162.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: pushing/pulling limited as per exertional weight limits; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; never climb ladders/ropes/scaffolds; no commercial driving and no work at unprotected heights; occasional exposure to extreme cold, very loud noise as defined by SCO code 5, exposure to vibration, and use of hazardous machinery; no exposure to extreme bright lighting but normal office and home lighting is acceptable; and the need to use a cane for ambulation. Additionally, the claimant is limited to simple, routine one to two step tasks and occasional three to four step tasks that are goal-based production/work measured by end result and not pace work. The work needs to be low stress defined as only occasional changes in the work setting. The claimant would be able to interact occasionally with supervisors, co-workers and the public.

(R. at 3162.)

In reaching this determination, the ALJ accorded various degrees of weight to the numerous opinions of record with supportive reasoning. (R. at 3163-3165.)

Relying on the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work as a photocopy machine operator, pizza delivery driver, or clerk. (R. at 3170.) Further, based upon the VE's testimony and the totality of the evidence, and considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy as of the alleged onset date of disability. (R. at 3171.) The VE testified that representative jobs included inspector, sorter, and table worker. (*Id*.) Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (R. at 3172.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

Plaintiff, proceeding here *pro se* has filed a 74-page document comprised of a three-page letter (ECF No. 13, at 11-13) which Plaintiff describes as his Statement of Errors (*Id.* at 2) and

6

various supporting exhibits including medical records and previous and current home healthcare plans.[2] The Undersigned construes Plaintiff's filing as setting forth two assignments of error: (1) the ALJ erred in concluding that his impairments did not meet or equal a Listing and (2) the RFC is not supported by substantial evidence.  The Undersigned considers each issue in turn below.

> A.  **The Listings**

Plaintiff faults the ALJ's conclusion that his impairments, alone or in combination, do not meet or equal a listing.  The Undersigned disagrees and finds that substantial evidence supports the ALJ's conclusion.

A plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir.

---

[2] It appears that several of Plaintiff's exhibits were part of the record before the ALJ.  *See* ECF No. 13 at 14.  Other documents, however, such as his current home healthcare plan, appear to postdate, at least in part, the ALJ's decision. The Court cannot consider such late submitted evidence for a substantial-evidence analysis, but it can consider whether this matter should be remanded for further proceedings. *Barnes v. Saul*, No. CV 19-10468, 2020 WL 2951118, at *3 (E.D. Mich. Apr. 30, 2020), *report and recommendation adopted sub nom. Barnes v. Comm'r of Soc. Sec.,* No. 19-10468, 2020 WL 2934817 (E.D. Mich. June 3, 2020).

"Sentence six of § 405(g) permits remand to an ALJ for further consideration when there is 'new evidence which is material and [ ] there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id*. citing § 405(g); *see also Shaw v. Comm'r of Soc. Sec.*, No. 00-10460-BC, 2004 WL 1765475, at *5 (E.D. Mich. July 14, 2004) ("The prevailing view in the Sixth Circuit" is to evaluate whether the evidence submitted after the hearing but before the ALJ's written decision "warrants further consideration as new and material information" under sentence six of § 405(g)). "Evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different decision if the new evidence were considered." *Id.* (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002).  For the "good cause" requirement, the Sixth Circuit "has taken a harder line" and requires a claimant to "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  Plaintiff has not met the criteria for a sentence six remand.

1986). The plaintiff has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c).  Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the [plaintiff]." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost establishes a disability" under Listing).

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Frost v. Comm'r of Soc. Sec.*, No. 3:18-CV-70, 2019 WL 5304056, at *2 (S.D. Ohio Oct. 21, 2019), *report and recommendation adopted*, No. 3:18-CV-70, 2020 WL 33116 (S.D. Ohio Jan. 2, 2020) (quoting *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(a)) (internal quotations omitted).  "An ALJ is not required to 'address every listing' or to 'discuss listings that the applicant clearly does not meet.'" *Id*. quoting *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (citations omitted).  However, if the record evidence raises a "substantial question" regarding whether a plaintiff meets a listing, an ALJ's failure to discuss the relevant listing constitutes reversible error. *Id*. (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).  "To meet this standard, the 'claimant must point to specific evidence that demonstrates he [or she] reasonably could meet or equal every requirement of the listing.'" *Id*. (quoting *Smith–Johnson*, 579 F. App'x  at 432 (citations omitted)).

8

After an extensive discussion of the record medical evidence (R. at 3153-3160), the ALJ concluded that Plaintiff's impairments did not meet or equal a Listing, reasoning as follows:

> The claimant's MRI shows only mild degenerative disc disease at L4-5 with laminectomy changes without stenosis. There is only fibrosis about the thecal sac encroaching on the LS nerve roots. Clinical examinations, however, have been inconsistent with "bizarre" behavior. Some examinations show sensory loss along a dermatome, others show generalized sensory loss not along a dermatome, and yet others show no sensory loss. The same is true of reflex abnormalities, muscle weakness, and straight leg raising. Because of the inconsistencies in the medical evidence, including no significant progression noted on MRI, and the claimant's presentations during the examinations, I cannot find that the criteria of Listing 1.04 is met or equaled.
>
> Additionally, although the claimant has a diagnosis of fibromyalgia and myofascial pain disorder, clinical examinations do not show persistent trigger/tender points. And the claimant's migraine headaches are under good control with medications and without the need for emergency room visits or doctor visits specifically for the migraines. And they do not interfere with his daily activities, again described in more detail below. Therefore, the claimant's fibromyalgia, myofascial pain disorder, and migraine headaches do not meet or equal the severity of the Listings.
>
> The claimant did have a traumatic brain injury. However, there are no neurological deficits associated with a brain injury and no cognitive deficits. Therefore, the requirements of the 11.00 Listings as well as Listing 12.02 are not met or equaled.
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or equal the criteria of listings 12.04, 12.06, and 12.11. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a *moderate limitation.* In interacting with others, the claimant has a *moderate limitation.* With regard to concentrating, persisting, or maintaining pace, the claimant has a *moderate limitation.* As for adapting or managing oneself, the claimant has experienced a *moderate limitation.* It is rather difficult to ascertain the correct "paragraph B" findings considering the claimant's inconsistent assertions and overdramatic reactions on examinations (explained in more detail below). He

9

has a long, reported history of depression and anxiety as well as PTSD. Examinations have shown few mental abnormalities, primarily nervousness. Neither the evidence nor at the hearings did the claimant have any difficulties understanding and responding appropriately. And mental status examinations do not reveal any problems with memory. He has many friends with whom he stays in contact and has had no difficulty relating to medical staff. The claimant lives by himself and can manage both his personal needs and the household need (again, described below). Psychological evaluations showed mild to no difficulty concentrating, and the claimant has had no trouble concentrating when explaining his numerous impairments (Exhibits 17E, 21E). Giving the claimant the benefit of all reasonable doubt and the longitudinal history of his diagnoses, I conclude that the claimant has moderate limitations in these four areas of functioning.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. A mental disorder in this listing category is "serious and persistent;" that is, a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and 2) Marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of his/her daily life. The claimant lives alone and is able to take care of himself and his household. He is also independently able to attend his doctor appointments.

(R. at 3160-3161.)

Plaintiff takes issue with many of the above findings. Specifically, Plaintiff contends that the ALJ erred in failing to conclude that his impairments met or equaled Listings 1.04B; 11.08C; 11.18 A and B; 12.04; and 12.15.

To the extent that Plaintiff contends that he has a spine disorder that meets or equals the criteria of Listing 1.04B, that Listing applies where there is evidence of spinal arachnoiditis.[3]

---

[3] B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

There is no evidence of spinal arachnoiditis in the record and Plaintiff does not cite to any. Accordingly, there was no error in the ALJ's conclusion that Plaintiff's impairment did not meet or equal this Listing.

For Plaintiff's condition to meet or equal the criteria for Listings 11.08 and 11.18, Plaintiff must demonstrate a "marked limitation" in one of the following areas of mental functioning:

1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
2. Interacting with others (see 11.00G3b(ii)); or
3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
4. Adapting or managing oneself (see 11.00G3b(iv)).

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Listings 12.04 and 12.15 require consideration of the identical areas of mental functioning, although meeting the criteria of those specific Listings requires an "extreme" limitation in one area or a "marked" limitation in two. *Id.* As set forth above, the ALJ, giving Plaintiff the benefit of the doubt, determined that Plaintiff's limitation in each area was "moderate." (R. at 3161.) This conclusion is supported by substantial evidence. (*See, e.g.,* R. at 267-274; 293-294; 3403-3412; 3466-3465; 3466-3472; 3473-3480; 3565-3566; 3602; 3769; 3770; 3869-3876; 3877- 3883; 3966-3968; 4032-4086; 4000; 4002; 4134-4138; 4138-4143; 4156; 4163; 4197; 4358-4359; 4369-4398; 4413-4420; 4598-4600.) Plaintiff has not met his burden of proving that he met the criteria of any listing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (noting claimant has the burden at step three).

Moreover, even if there is evidence in the record that could support different ratings in the mental functioning criteria, as long as substantial evidence supports the ALJ's findings, this Court defers to those findings. *Smith v. Comm'r of Soc. Sec.*, No. 3:15-cv- 384, 2017 WL 427359, at *7 (S.D. Ohio Feb. 1, 2017); *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support

11

his factual conclusions, we are not to second-guess."); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

In sum, substantial evidence supports the ALJ's conclusion that none of Plaintiff's severe impairments met or equaled a Listing. For this reason, it is **RECOMMENDED** that this contention of error be **OVERRULED.**

B. **RFC**

Plaintiff also contends that the ALJ erred in formulating an RFC that included sedentary work. Again, the Undersigned disagrees and finds that the ALJ's RFC determination is supported by substantial evidence.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, the ALJ explained his assessment of Plaintiff's RFC, in part, as follows:

> This residual functional capacity is well supported by the evidence of record as summarized above. Physically, the claimant's laminectomy did resolve his herniated disc. Subsequent MRI demonstrates mild degenerative disc disease with epidural fibrosis encroaching on the L5 nerve roots and epidural fat narrowing the thecal sac at L5-Sl. However, clinical examinations have shown inconsistencies. Sometimes there is sensory loss along a dermatome and other times there is no loss. Reflexes have been intact or decreased. Motor testing has either been normal or reduced depending on the claimant's cooperation during the examination. Straight leg raising has been positive but also negative. And although he uses a cane and a walker, the motor testing, not showing any atrophy, does not indicate a continuous need for a cane and no need for a walker. The claimant also has diagnoses of fibromyalgia and myofascial pain syndrome with most examinations not showing tender/trigger points. However, based on the claimant's MRI findings and the possibility that there are some neurological deficits that, at times, may require the use of a cane, I conclude that the claimant should perform no greater than sedentary work with only occasional stair/ramp climbing, balancing, stooping, kneeling, crouching, and crawling. He would be unable to climb ladders, etc. and perform no work in extreme cold temperatures or at unprotected heights. The claimant's migraine headaches have not required extraordinary measures, such as visits to the emergency room. However, they can be affected by bright lights, loud noise, and vibration. Thus he should not work where there is exposure to extreme bright lights, but normal office/home lighting would not trigger a headache. Additionally, considering all of his impairments, especially his migraines, he should not perform commercial driving.
>
> Mentally, the claimant does have a history of depression, anxiety, and ADHD dating prior to his accident. He also has symptoms of PTSD dating from his

13

accident. However, mental status examinations have not shown signs of ADHD except one time. And with a few exceptions, mood and affect have been normal with either no difficulties with concentration and attention or only mild difficulties. He is able to follow commands and has had good eye contact. Memory has also been intact, and thought process is logical. Furthermore, more recently, the claimant has stated that his depression and anxiety were under good control. And although the claimant has been diagnosed with social phobia, he has been noted to be pleasant during his examinations and has many friends with whom he interacts regularly. However, considering the longitudinal history of mental impairments but with few abnormalities on mental status examinations, the evidence supports that he would be limited to simple routine tasks but with his ability to concentrate and his average intelligence, he would occasionally be able to perform three to four step tasks as long as this does not include pace work but rather require goal-based tasks measured by end result. The work should only have occasional changes as more frequent changes could exacerbate his anxiety and depression. However, because he is able to interact with family and friends and is noted to be pleasant on examinations, he would be able to occasionally interact with supervisors, co-workers, and the general public.

(R. at 3162-3163.)

In formulating the RFC, the ALJ assessed and assigned weight to numerous medical opinions as well as Plaintiff's testimony and his activities of daily living. (R. at 3163-3168.) The ALJ's assessment and weighing is supported by substantial evidence. (*See*, *e.g.,* R. at 123-140; 141-158; 267-274; 293-294; 3214-3236; 3244-3258; 3260-3277; 3403-3412; 3466-3465; 3466-3472; 3473-3480; 3565-3566; 3602; 3769; 3770; 3869-3876; 3877- 3883; 3966-3968; 4032-4086; 4000; 4002; 4134-4138; 4138-4143; 4156; 4163; 4197; 4358-4359; 4369-4398; 4413-4420; 4598-4600.)

Moreover, the ALJ reasonably assessed Plaintiff's credibility when formulating the RFC. The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:[4]

---

[4] An ALJ's consideration of a claimant's statements about symptoms and limitations, generally known as a credibility analysis, is required. But, as clarified by SSR 16-3p (applicable as of March 28, 2016), the focus is not on the claimant's propensity for truthfulness or character but rather on the consistency of his statements about the intensity, persistence, and limiting effects of

14

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06-CV-1566, 2012 WL 669930, at *10 (N.D.

---

symptoms with the relevant evidence. *See* SSR 16-3p, 2017 WL 5180304 at *2, *6, *11. Consequently, the Court uses the term "credibility" in the context of assessing the consistency of Plaintiff's statements about his symptoms with the evidence in the record.

Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

The ALJ reached his decision by considering Plaintiff's physical examinations; his testimony regarding his physical capabilities and activities of daily living; and the numerous inconsistencies in the record which he set forth in much detail.  (R. at 3167-3168; 3168-3170.) His evaluation was consistent with the regulations and is supported by substantial evidence. *See* 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you.")  On this record, the Undersigned cannot find a basis to disturb the ALJ's credibility assessment.

To the extent Plaintiff challenges the ALJ's assessment of the record, the Sixth Circuit has repeatedly held that "[i]f substantial evidence supports the Commissioner's decision, this

Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (internal quotations omitted).

In sum, substantial evidence supports the ALJ's formulation of Plaintiff's RFC. For these reasons, it is **RECOMMENDED** that this contention of error be **OVERRULED.**

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

|  |  |
|---|---|
| **DATED: December 17, 2020** | **/s/** *Elizabeth A. Preston Deavers*<br>**ELIZABETH A. PRESTON DEAVERS**<br>**CHIEF UNITED STATES MAGISTRATE JUDGE** |